Filed 1/18/24  P. v. Banks CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID BANKS,<br><br>    Defendant and Appellant. | B330260<br><br>(Los Angeles County<br>Super. Ct. No. BA501795) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

## MEMORANDUM OPINION[1]

A jury convicted defendant David Banks of second degree robbery (Pen. Code, § 211; count 1) and carjacking (*id.*, § 215, subd. (a); count 2). Trial evidence showed another unknown individual participated with Banks in committing these crimes. Banks argues we should reverse his conviction because his trial counsel failed to request a pattern instruction telling jurors not to speculate whether the "other perpetrator" of the crimes was or would be prosecuted. We reject Banks's claim of ineffective assistance of counsel and affirm his judgment of conviction.

### A.     The Evidence at Trial

In December 2021, Fernando A.[2] was 17 years old and made money by selling chips and candy at his school. He used his earnings to buy a "pocket bike," which is a miniature motorcycle. On December 5, 2021, after Fernando bought chips and candy for resale, he stopped to get gas for his pocket bike before going home.

At the filling station, a gray SUV pulled up behind Fernando. Surveillance video showed that the SUV initially drove past the station, but then reversed and backed up to stop next to Fernando. An unknown man wearing a ski mask (Doe) got out of the SUV, approached Fernando, and asked where

---

[1] Pursuant to California Standards of Judicial Administration, section 8.1(1), we address this matter by memorandum opinion. Accordingly, we discuss only those facts necessary to our resolution.

[2] Because he is a victim in a criminal proceeding, we use Fernando's first name and the initial letter of his surname. (Cal. Rules of Court, rule 8.90(b)(4).)

Fernando was from. Fernando understood this to be a gang-related challenge and responded that he was not from anywhere. Doe stated his gang affiliation, and Fernando said something like "What's that" or "I don't know what that [is]." This comment visibly bothered Doe, who became more aggressive and crept towards Fernando, making Fernando nervous.

Fernando heard someone else say, "Get off the bike." Fernando then saw Banks, who was standing a couple of feet away. Banks lifted his jacket to reveal the outline of a gun under his shirt, tucked into his waistband; Fernando did not see the gun itself. Afraid, Fernando immediately put his hands in the air and got off his pocket bike.

As soon as Fernando dismounted, Banks ordered Doe to get on the bike. Banks asked Fernando what was in his duffel bag. Fernando showed Banks that it was just chips and candy; Banks was not interested. Banks demanded to know what else Fernando had. Fernando said he had an iPhone but pleaded with Banks not to take it. Throughout this encounter, Banks rested his hand on top of the bulge of his gun. Fernando kept his hands up in the air; he was scared and shaking, and obeyed Banks's directions out of fear.

Meanwhile, Doe struggled to start the pocket bike. Fernando eventually told Doe how to start it because Fernando was scared, knew the motorcycle was going to be stolen, and did not want to risk his life because Banks had a gun. Once Doe started the motorcycle, Banks (in the gray SUV) and Doe (on Fernando's pocket bike) drove off at the same time and in the same direction.

Surveillance footage from the gas station captured the incident as well as the SUV's license plate number. About one

3

week later, a police officer saw an SUV that appeared to match the one from the robbery. When the SUV was pulled over, Banks was driving. When interviewed, Banks admitted being at the gas station on the night of the robbery, but said he was there trying to get gas, had nothing to do with the robbery, and did not know Doe's name.

At trial, Banks testified that he knew Doe from the neighborhood but reiterated he did not know Doe's name. Doe asked Banks for a ride but did not tell Banks where Doe was going. Banks agreed but needed to fill up first and stopped at the gas station. At the gas station, Banks and Doe got out of the SUV and approached Fernando. When Doe initially asked Banks for a ride, Doe did not have a ski mask on. Although they sat three feet apart in the SUV, Banks did not notice when Doe donned the ski mask. Banks only listened to Doe speaking to Fernando; Banks testified he wanted nothing to do with what Doe was saying. Banks denied speaking to Fernando or looking at him. The surveillance footage showed Banks's mouth moving, but Banks said that was because he spoke to Doe. Banks denied lifting his clothing to show a gun. He said the surveillance footage showed him lifting his clothing because Banks took his cell phone out from his pocket.

## B.     Discussion

Banks claims he received ineffective assistance of counsel because his trial attorney failed to request the court instruct the jury with CALCRIM No. 373, "Other Perpetrator." That jury instruction provides: "The evidence shows that (another person/other persons) may have been involved in the commission of the crime[s] charged against the defendant. There may be many reasons why someone who appears to have been involved

4

might not be a codefendant in this particular trial.  You must not speculate about whether (that other person has/those other persons have) been or will be prosecuted.  Your duty is to decide whether the defendant on trial here committed the crime[s] charged."  (CALCRIM No. 373 (March 2023 ed.).)

A trial court must give CALCRIM No. 373 if requested but has no sua sponte duty to give the instruction absent a request.  (See *People v. Sanders* (1990) 221 Cal.App.3d 350, 359 [discussing parallel CALJIC instruction].)  No such request was made.  Banks contends his counsel's failure to make such a request amounted to constitutionally deficient representation, and that this deficient representation prejudiced him.

### 1. *Standard of Review*

To substantiate a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel's representation was deficient, and (2) counsel's representation subjected him to prejudice, meaning there is a reasonable probability that, but for counsel's failings, the result would have been more favorable.  (*People v. Montoya* (2021) 68 Cal.App.5th 980, 998.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2025, 80 L.Ed.2d 674].)

A defendant bears a heavy burden to establish ineffective assistance of counsel on direct appeal.  (*People v. Garcia* (2022) 76 Cal.App.5th 887, 900.)  In assessing whether a defendant has met this burden, we first determine whether the record contains any explanation for the challenged aspect of representation.  (*People v. Jackson* (1989) 49 Cal.3d 1170, 1188.)  The record here contains no such explanation.

5

When as in this case the record sheds no light on " 'why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) Stated differently, we will reverse a conviction on ineffective assistance of counsel grounds " ' "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [her] act or omission." ' [Citation.]" (*People v. Bradford* (1997) 14 Cal.4th 1005, 1052.)

2. *Banks Fails to Demonstrate No Rational Tactical Purpose for Failing to Request CALCRIM No. 373*

Banks asserts that, absent CALCRIM No. 373, "it is likely the jury convicted [him] not based solely on the evidence, but because of their disgust that the 'other perpetrator' was not being held accountable" and because of Banks's mere "association with the other perpetrator." He therefore concludes his counsel had no rational tactical purpose for failing to request the instruction be given.

We disagree. The defense sought to blame Doe alone for what happened. Banks testified that he had nothing to do with what Doe said and did to Fernando, and that Banks just stood by and listened. Defense counsel argued Banks was a victim of circumstance, someone who had "a very poor taste in friends" but could not be found guilty for having failed to "stop [Doe's] taking of the bike."

Defense counsel rationally could be concerned that jurors would interpret CALCRIM No. 373 as telling them not to focus on Doe (which is where defense counsel wanted them to focus) and

6

instead to focus solely on Banks's actions (which strongly pointed to his guilt). After all, the instruction would have told jurors not to speculate about any prosecution of Doe and instead focus on "whether the defendant on trial here," namely Banks, "committed the crime[s] charged." (*Ibid.*) Counsel also could have been concerned that the instruction would lead jurors to give disproportionate weight to Banks's refusal to identify Doe. While telling jurors not to speculate whether Doe had been or would be prosecuted, the instruction notes, "There may be many reasons why someone who appears to have been involved might not be a codefendant in this particular trial." (*Ibid.*) Defense counsel could rationally worry that the instruction would highlight the primary reason Doe was not a codefendant was Banks's refusal to identify him despite the defense claim that Doe was solely responsible for the theft. In short, Banks's counsel could rationally conclude CALCRIM No. 373 would not advance the defense but instead undermine it.

3. *Banks Fails to Establish Prejudice*

Even if we were to agree that defense counsel was deficient in not requesting the court give CALCRIM No. 373, Banks has not shown the failure to give this instruction prejudiced him. Banks claims that without the instruction, "the jurors were likely distracted from their consideration of [his] guilt . . . because they were wondering why [Doe] was not on trial as well," and "it is likely the jury convicted [Banks] not based solely on the evidence, but because of their disgust that the 'other perpetrator' was not being held accountable."

Defense counsel's alleged deficiency cannot be evaluated based solely on unsubstantiated speculation. (*People v. Mai* (2013) 57 Cal.4th 986, 1018.) The jury instructions as given

7

made clear that the jury was to hold Banks responsible for his own conduct; the prosecutor's closing argument did not suggest anything different. The instructions as given did not, as Banks speculates, permit the jury to find him guilty as a means to hold someone accountable independent of Banks's own actions. Jurors are presumed to follow the court's instructions (*People v. Chhoun* (2021) 11 Cal.5th 1, 30), and we decline Banks's invitation to speculate to the contrary.

In addition, the evidence against Banks was extremely strong; it showed Banks was a boss and not a bystander. CALCRIM No. 373 "merely says the jury is not to speculate on whether someone else might or might not be prosecuted." (*People v. Farmer* (1989) 47 Cal.3d 888, 918 [discussing parallel CALJIC instruction], italics omitted.) Even if the jury had been told not to speculate whether Doe was or would be prosecuted, the evidence showed Banks initially drove past the gas station, then backed up to stop next to a 17-year-old victim standing by himself. Banks ordered Fernando off the motorcycle, showed Fernando that Banks was armed with a handgun, and kept his hand resting on the gun throughout the encounter. Banks directed Doe to take the motorcycle. Banks demanded to know what else Fernando had and checked the duffel bag to see if it contained anything valuable. Banks waited for Doe to start the motorbike before Banks left in his SUV in the same direction. Surveillance video corroborated Fernando's testimony; the jury understandably found Banks's explanation of what occurred not credible. Given this overwhelming evidence, there is no reasonable probability the jury would have reached a different verdict if CALCRIM No. 373 was given.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.